**Valentin Gurvits** (*pro hac vice* forthcoming)
vgurvits@bostonlawgroup.com
**Matthew Shayefar** (*pro hac vice* forthcoming)
matt@bostonlawgroup.com
**Boston Law Group, PC**
825 Beacon Street, Suite 20
Newton Centre, Massachusetts 02459
Tel: 617-928-1800 | Fax: 617-928-1802

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF ARIZONA

| | |
|---|---|
| **GGS Ltd**,<br>an Anguilla company, and<br>**InfoStar Management Ltd,**<br>an English company,<br><br>　　Plaintiffs,<br><br>v.<br><br>**Ritzio Purchase Limited**,<br>a Cyprus company,<br>**Dareos Inc.**,<br>a Marshall Islands company, and<br>**Dareos Ltd.**,<br>a Cyprus company,<br><br>　　Defendants. | Case No.:<br><br>**COMPLAINT**<br>For Declaratory Judgment and Injunctive<br>Relief<br><br>DEMAND FOR JURY TRIAL |

Plaintiffs, by and through their undersigned counsel, seek declaratory and injunctive relief to establish that their registration and use of domain names listed herein are not unlawful.

### Introduction

1.　　Plaintiffs have registered and used a number of domain names using names that evoke the term "volcano."  These domain names are used for gaming websites targeted to Russian speaking users based almost entirely in Russian and Ukraine.

1

2.      Defendants are the putative owners and licensees of several purported trademarks used in connection with gaming that also evoke the term "volcano."  After years of acting as if they had no trademark rights, and years after they had ceased using the purported trademarks in Russia and Ukraine, Defendants filed an administrative proceeding against Plaintiffs under the rules of the Uniform Domain-Name Dispute-Resolution Policy (the "**UDRP**"), alleging that numerous domain names registered to and used by Plaintiffs infringed Defendants' purported trademark right in the term VULKAN.

3.      Defendants brought the UDRP proceeding despite the fact that (1) VULKAN is not a valid trademark as used in connection with gaming in Russia, where it is essentially prohibited, (2) all the asserted country-level trademark registrations were issued in Russia prior to the prohibition and those registrations are not valid, (3) Defendants never had the exclusive right to use the term VULKAN in connection with gaming in Ukraine, and (4) all of Defendants' international trademark registrations rely upon those invalid Russian registrations.

4.      Furthermore, Defendants have been using the UDRP as part of a fraudulent scheme to steal the domain names of legitimate competitors without a proper adjudication of rights allowed under the UDRP and by any comprehensive and legitimate legal system.  It is certain that Defendants will attempt to engage in the same fraudulent scheme in connection with this lawsuit.

5.      Plaintiffs now bring this action to prevent the wrongful transfer of their domain names to Defendants and for a declaratory judgment that Plaintiffs are not infringing the trademark rights being asserted by Defendants.

**The Parties**

6.      Plaintiff GGS Ltd. is company registered under the laws of Anguilla ("**GGS**").

2

7.      Plaintiff InfoStar Management Ltd is a company registered under the laws of England ("**InfoStar**," and together with GGS, "**Plaintiffs**").

8.      On information and belief, Defendant Ritzio Purchase Limited is a Cyprus company with Corporate ID 144533 and a business address of Diagorou Street 4, Kermia Building, 6th Floor, Office 601, P.C. 1097, Nicosia, Cyprus ("**Ritzio**").

9.      On information and belief, Defendant Dareos Inc. is a corporation incorporated under the laws of the Republic of Marshall Islands with Corporate ID 85657 and a business address at Trust Company Complex, Ajeltake Road, Ajeltake Island, Majuro, MH96960, Republic of Marshall Islands.

10.     On information and belief, Defendant Dareos Ltd. is a Cyprus company with Corporate ID HW372002 and a business address at Prevezis, 13, 1st Floor, Flat/Office 101, 1065, Nicosia, Cyprus (and together with Ritzio and Dareos Inc., "**Defendants**").

## Jurisdiction and Venue

11.     Pursuant to 28 U.S.C. §§ 2201(a) and 2202, Plaintiffs seek a declaration and judgment relating to their rights and obligations in an actual controversy within this Court's jurisdiction concerning Plaintiffs' rights in and to certain domain name registrations and in and to certain trademarks allegedly owned by Defendants.

12.     Subject matter jurisdiction exists in this case pursuant to 28 U.S.C. § 1331, giving this Court original jurisdiction in a civil action raising a federal question, 28 U.S.C. § 1338(a), the Lanham Act (15 U.S.C. § 1051, *et seq.*) and 15 U.S.C. § 1114(2)(D)(v).

13.     This Court has personal jurisdiction over Defendants because Defendants have sufficient contacts with the State of Arizona and this judicial district subjecting them to the

specific personal jurisdiction of this Court pursuant to Arizona's long arm statute and/or Federal Rule of Civil Procedure 4.

14.     Defendants consented to the personal jurisdiction of this Court when they filed their UDRP Complaint against Plaintiffs pursuant to the Uniform Domain-Name Dispute-Resolution Policy.  Specifically, Complainants certified that they "will submit, with respect to any challenges that may be made by the Respondent [Plaintiffs] to a decision by the Administrative Panel to transfer or cancel the domain names(s) that is/are the subject of this Complaint, to the jurisdiction of the courts the location of the principal office of the concerned registrar."

15.     The concerned registrar for some of the domain names in the UDRP complaint is GoDaddy.com, LLC, which has its principal office at 14455 N. Hayden Road, Suite 226, Scottsdale, Arizona 85260 in this district.  Plaintiffs have already filed suit against Defendants for the domain names registered with GoDaddy.com, LLC in this judicial district (Case No. 2:18-cv-01512-DLR).

16.     The domain names that are the subject of this lawsuit are registered with URL Solutions, Inc. d/b/a Pananames ("Pananames"), which has its office in Bella Vista, Panama. However, pursuant to preliminary research by lawyers in Panama, there is no legal vehicle under which to file a lawsuit in Panama.  *See* Exhibit 1 hereto.  Pananames has also indicated that they will transfer the domain names subject to this lawsuit by May 24, 2018 unless a lawsuit is filed. *See* Exhibit 2 hereto.  Accordingly, given that Defendants have already voluntarily submitted to this Court's jurisdiction when they filed the UDRP Complaint against Plaintiffs, this Court is the only Court where Plaintiffs can obtain speedy and appropriate relief to halt the transfer of their domain names until a full adjudication of rights.

17.     Venue is proper in the District of Arizona pursuant to 28 U.S.C. § 1391 because the Court has personal jurisdiction over Defendants and because a substantial part of the events or omissions giving rise to this Complaint occurred in this judicial district.  Moreover, venue is proper in the District of Arizona because of Defendants' voluntary submission to this Court's jurisdiction when they filed their UDRP Complaint against Plaintiffs.

18.     Although jurisdiction and venue are proper in this Court, this dispute substantially involves issues of Russian law and other foreign and international law.

## Facts

**A.     Plaintiffs and the Domain Names**

19.     Plaintiff GGS is the registrant of the following domain names, some of which bear the name of personnel of GGS in the WhoIs records for the domain names, including Irina Polyakova, Vikor Dmitriev, and Grygorii Leontiev:

```
velcomdeluxe.co
velcomdeluxe.com
velkomdeluxe.com
velcamdeluxe.com
velcamdeluxe.co
velkamdeluxe.com
velkamdeluxe.co
velkomdeluxe.co
velkom-delux.co
velcam-delux.co
velkam-delux.co
velkam.tv
vulcandeluxe.com
vulcandelux.com
vulcandeluxe.email
vulcandeluxe.mobi
vulkandelux.mobi
vulkandelux.online
vulkandelux.xyz
vulcandelux.xyz
vulcandelux.mobi
vulkancasino.com
```

vulkan-palace.com
win-vulkan.com
vlkonline.com
vipvulkan.com
bestvulkan.org
bestvulkan2.com
bestvulkan3.com
bestvulkan4.com
bestvulkan5.com
bestvulkan6.com
bestvulkan7.com
bestvulkan8.com
bestvulkan9.com
bestvulkan10.com
vulkan-delux.net
vulcan-delux.org
vulcan-delux.net
deluxvulkan.com
myvulkan.email
moyvulcan.com
velkamdeluxe1.com
velkamdeluxe4.com
velkamdeluxe6.com
velkamdeluxe9.com
velkamdeluxe11.com
velkamdeluxe15.com
velkamdeluxe18.com
velkamdeluxe21.com
vlkplay.com
vlkslots.com
myvulk.com
casinovlk.com
vlkgames.com
bestvlk.com
vulkanprize.com
vulcandelux.cc
vulkandelux.cc
moivulkan.com
vulcan-million.com
vulcandeluxe.online
myvelkamdeluxe.com
velkamdeluxe.xyz
club-vulkan.tv
vulkandeluxe2.com
vlkngames.biz
vlkngames.co

vlkngames.net
vlkngames.org
vlkngames.xyz
vlkngames.mobi
vlkngames.email
vlkngames.info
vlkngames.online
vlknslots.com

20.     Plaintiff InfoStar is the registrant of the following domain name:

velkamdeluxe.xyz

21.     As used herein, the "**Domain Names**" refers to all of the domain names referenced in the foregoing paragraphs.

22.     The Domain Names were registered for the benefit of Plaintiff GGS, who operates and controls the Domain Names and the websites at the Domain Names.

23.     The websites at the Domain Names are gaming websites where users can play slot-machine-like games and win prizes.

24.     Plaintiffs began registering the domain names starting in 2011.

25.     Most, if not all, of the visitors to the Domain Names come from Russia or Ukraine.

26.     The websites at the Domain Names are available ONLY in the Russian language, and thus are aimed only at users in Russia and Ukraine.

**B.      Defendants and their Disputed Registrations**

27.     Defendant Ritzio claims that it began providing casino and entertainment products in Russia under the trademark VULKAN in 1992 and claim that it eventually received four trademark registrations in Russia (the "**Russian Registrations**") and that it received various international trademark registrations, all of which rely upon the Russian Registrations as the

underlying "basic" registrations (the "**International Registrations**", and together with the Russian Registrations, the "**Disputed Registrations**").

28.     Upon information and belief, Ritzio recently transferred most of the Disputed Registrations to "its partners," Defendants Dareos Ltd. and Dareos Inc., but Ritzio continues to own and control a large amount of the Disputed Registrations and Ritzio is and will be a licensee of Defendants Dareos Ltd. and Dareos Inc. when all transfers are complete.

29.     Defendants relied upon their Disputed Registrations, particularly the Russian Registrations, in their UDRP Complaint.

30.     However, Russia banned all online gambling in late 2006, with the effect that Defendants could not have had any legal online gambling operations in Russia thereafter.

31.     Moreover, Defendants ceased all brick-and-mortar gambling operations in Russia in early 2009 as a result of another law that made all gambling virtually illegal throughout Russia.  *See* Russian Law N244-FZ, §§ 5.3 & 5.4.

32.     Because of the illegality of both online and brick-and-mortar gambling operations in Russia, Defendants have been unable to offer services in Russia for at least the past seven years (brick-and-mortar) or ten years (online), such that to the extent that they claim protection for gambling services, the Russian Registrations are invalid due to abandonment and non-use and are subject to cancellation.

33.     The English translation of the Cyrillic-character trademarks put forth by Defendants in the UDRP Complaint is "volcano."

34.     Volcano-related imagery is popular in the context of gambling, as such imagery calls to mind the "eruption" of coins and other winnings that are bestowed upon lucky gamblers. For instance, the Mirage Casino in Las Vegas famously has a large volcano at its entrance.

35.     As a result, gambling-related businesses frequently incorporate references to volcanos and volcano-related imagery.

36.     As a result of this regular use of volcanos in gambling-related businesses by other parties, Defendants have been prevented from registering their marks in Ukraine.

**C.     Defendant Ritzio's Abuse of the UDRP**

37.     In two other UDRP proceedings (*Ritzio Purchase Limited v. Escave Ltd*, D2015-00875 (WIPO Aug. 12, 2015) and *Ritzio Purchase Limited v. Budusov / InfoStar Management Ltd*, D2015-1106 (WIPO Oct. 7, 2015)), Defendant Ritzio agreed to submit, with respect to any challenges that would be made by the respondents to a decision by the administrative panels to transfer or cancel the domain names, to the jurisdiction of the courts at the location of the registrants' addresses in the WhoIs database (the "**Mutual Jurisdiction**").

38.     The Mutual Jurisdiction in the *Escave* case was in the Seychelles and the Mutual Jurisdiction in the *InfoStar* case was in England.  Plaintiffs were parties to those proceedings.

39.     In both of those proceedings, the administrative panels found in favor of Ritzio, but shortly thereafter, and in accordance with the provisions of UDRP ¶ 4(k),[1] Plaintiffs filed

---

[1] UDRP ¶ 4(k) states as follows:

  Availability of Court Proceedings. The mandatory administrative proceeding requirements set forth in Paragraph 4 shall not prevent either you or the complainant from submitting the dispute to a court of competent jurisdiction for independent resolution before such mandatory administrative proceeding is commenced or after such proceeding is concluded. If an Administrative Panel decides that your domain name registration should be canceled or transferred, we will wait ten (10) business days (as observed in the location of our principal office) after we are informed by the applicable Provider of the Administrative Panel's decision before implementing that decision. We will then implement the decision unless we have received from you during that ten (10) business day period official documentation (such as a copy of a complaint, file-stamped by the clerk of the court) that you have commenced a lawsuit against the complainant in a jurisdiction to which the complainant has submitted under Paragraph 3(b)(xiii) of the Rules of Procedure. (In general, that jurisdiction is either the location of our principal office or of your address as shown in our Whois database. See Paragraphs 1 and 3(b)(xiii) of the Rules of Procedure for details.) If we receive such documentation within the ten (10) business day period, we will not implement the Administrative Panel's decision, and we will take no further action, until we receive (i) evidence satisfactory to us of a resolution between the parties; (ii) evidence satisfactory to us that your lawsuit has been dismissed or withdrawn; or (iii) a copy of an order from such court dismissing your lawsuit or ordering that you do not have the right to continue to use your domain name.

lawsuits in the appropriate jurisdictions to challenge the administrative panels' decisions (as they are doing again here).

40.     However, despite representing in their complaints in those UDRP proceedings that Ritzio would submit to the jurisdiction of the courts in England and Seychelles, Ritzio subsequently challenged the right and jurisdiction of the respective courts to hear the disputes.

41.     As a result of these actions, Plaintiffs and other parties were stripped of their rights to fully adjudicate the merits of their cases promised by UDRP ¶ 4(k) and due process.

42.     Those domains have now been transferred to Ritzio as a result of its fraud and Plaintiffs have been damaged as a result thereof.

43.     Ritzio's actions constituted fraud because Ritzio was required to submit to those jurisdiction in order to file its UDRP complaints and was not entitled to a decision from the administrative panels if it did not submit.

**D.     Ritzio's Implied Consent to GGS and Others**

44.     For many years, Ritzio either explicitly consented to third parties using its putative trademarks without any oversight or licensing, or simply did not care that third parties did so.

45.     For instance, Plaintiff GGS began operating a website at the domain name vulcan-casino.com in June of 2011, and continued to operate numerous other domain names and websites incorporating the name.

46.     GGS operated its domain names openly and with the implicit consent of Ritzio for nearly four years.

47.     Ritzio had extensive discussions with GGS regarding its domain names and websites, including discussions about possible joint projects.

48.     Upon information and belief, for years, Ritzio also allowed another company called EvoPlay LLP to operate websites at no fewer than 18 domain names that include the putative VULKAN mark, including domain names like club-vulkan.com and vulkanpremium.com.

49.     Upon information and belief, EvoPlay had been operating these domain names and websites since as early as 2011, without any authorization or license from Ritzio.

50.     Similarly, Plaintiffs registered the Domain Names and their websites operated for years in full view of Defendants, who took no action against those domain names until recently.

51.     Having at the very least impliedly consented to so many parties using the marks for so many years, including Plaintiffs here, Defendants should not now be permitted to hijack the domain names of others to use for their own purposes.

**E.      Defendants' Attempt to Reverse Hijack the Domain Names**

52.     On or about January 19, 2018, over six years after Plaintiffs registered the first of the Domain Names, and over nine years since Defendants had operated at all in Russia, Defendants filed a complaint against Plaintiffs under the UDRP to secure the transfer of the Domain Names from Plaintiffs to Defendants.

53.     The UDRP proceeding was conducted by the World Intellectual Property Organization ("**WIPO**").

54.     In Defendants' UDRP Complaint, Defendants alleged that they owned the exclusive right to use the trademark VULKAN, which rights they alleged Plaintiffs were infringing with the registration and use of the Domain Names.

55.     Plaintiffs responded to Defendants' allegations and showed that Defendants could not satisfy any of the factors necessary for it to prevail in the UDRP proceeding and that, in

addition, Defendants brought the UDRP Complaint in bad faith and that it constituted an abuse of the administrative proceeding.

56.     On or about May 1, 2018, the administrative panel in the UDRP proceeding issued a decision directing that the Domain Names should be transferred to Defendants.

57.     Defendants' serious and incorrect accusations in the UDRP Complaint and the ancillary documents, and the Panel's decision itself, establish an actual controversy between the parties, and thus Plaintiffs requests that this Court grant declaratory, injunctive and affirmative relief in Plaintiffs' favor.

**F.     Defendants' Activities That Create a Justiciable Controversy**

58.     On or about January 19, 2018, Defendants initiated a UDRP proceeding against Plaintiffs.

59.     On or about May 1, 2018, the administrative panel in the UDRP proceeding issued its decision directing the transfer of the Domain Names to Defendants.

60.     Plaintiffs do not wish to transfer their rightfully-owned property (i.e., the Domain Names) to Defendants or allow such transfer to take place.

61.     Defendants' actions show a clear intent to use any means necessary to obtain the Domain Names, including litigation.  Thus, an actual, substantial and immediate controversy exists, justifying the declaratory relief that Plaintiffs seek.

## Count I

## Declaratory and Injunctive Relief Pursuant to 15 U.S.C. § 1114(2)(D)(v)

62.     Plaintiffs repeat, re-allege and incorporate each and every allegation listed in the preceding paragraphs.

63.     Plaintiffs rightfully registered the Domain Names in good faith, and with no intent to sell the Domain Names to Defendants or otherwise to cause harm or show bad faith toward Defendants.

64.     At the very least in the geographic areas in which the Domain Names are used, Defendants have no legally cognizable trademark rights that are confusingly similar to the Domain Names.

65.     Plaintiffs believed and had reasonable grounds to believe that their registrations and the use of the Domain Names were and are lawful.

66.     Plaintiffs have notified Defendants of their intent to file a civil action to establish that the registration and use of the Domain Names are lawful.

67.     The domain name registrar for the Domain Names, Pananames, has locked the transfer and updating of the Domain Names by Plaintiffs and, pursuant to the UDRP decision and absent the initiation of this civil action and a resolution of this matter in favor of Plaintiffs, will transfer the Domain Names imminently to Defendants.

68.     Plaintiffs have no other prompt and expeditious remedy to protect their interests and to prevent them from irreparable harm.

69.     To resolve this actual controversy, Plaintiffs seek a declaration establishing that their registration and the use of the Domain Names are lawful, and injunctive relief prohibiting the transfer of the Domain Names to Defendants, and otherwise unlocking the Domain Names.

## Count II

### Declaration of Non-Infringement of Trademark

70.     Plaintiffs repeat, re-allege and incorporate each and every allegation listed in the preceding paragraphs.

71.     Based on the facts set forth above, an actual controversy has arisen and now exists between Plaintiffs and Defendants regarding the issue of whether the registration and use of the Domain Names infringe Defendants' claimed rights under applicable laws.

72.     Plaintiffs deny Defendants' allegations.

73.     Absent a resolution of this matter, Plaintiffs will be uncertain as to whether their continued use of the Domain Names or domain names similar thereto expose Plaintiffs to liability.

74.     Plaintiffs have no other prompt and/or expeditious remedy to protect their interests and to prevent them from irreparable harm.

75.     Under the circumstances, a judicial declaration is necessary and appropriate at this time in order that Plaintiffs may determine their rights and duties under applicable law and the facts of this case.

## JURY DEMAND

Plaintiffs demand a trial by jury on all claims so triable.

## REQUESTED RELIEF

WHEREFORE, Plaintiffs pray that this honorable Court grant the following relief:

A.     Enter judgment for Plaintiffs on all Counts of their Complaint;

B.     Enter a declaration that Plaintiffs' use of the Domain Names do not infringe the trademark rights asserted by Defendants, and further declaring that Plaintiffs are free to otherwise engage in activities substantially similar thereto without restriction by Defendants;

C.    Enter a declaration that Plaintiffs registered and have used the Domain Names in good faith, are the rightful registrant of their respective Domain Names, and have used the Domain Names in conjunction with the offering of *bona fide* services;

D.    Issue a permanent injunction to enjoin Defendants and others from interfering with Plaintiffs' use and registration of the Domain Names, including prohibiting placing the Domain Names on "locked status," prohibiting cancelling the registrations for the Domain Names, prohibiting transferring the registrations for the Domain Names without the consent of Plaintiffs, or otherwise disturbing Plaintiffs' lawfully-obtained and operated Domain Names;

E.    Issue a permanent injunction to enjoin Pananames and WIPO from transferring the registrations for the Domain Names to Defendants;

F.    Award such other and further relief, whether legal or equitable, as the Court may deem just and proper.

Dated:        May 22, 2018            Respectfully Submitted,
                                      Plaintiff
                                      By their attorneys,

                                      /s/ Matthew Shayefar
                                      Matthew Shayefar (*pro hac vice* forthcoming)
                                      Valentin Gurvits (*pro hac vice* forthcoming)
                                      Boston Law Group, PC
                                      825 Beacon Street, Suite 20
                                      Newton Centre, Massachusetts 02459
                                      Tel:    (617) 928-1800
                                      Fax:    (617) 928-1802
                                      matt@bostonlawgroup.com
                                      vgurvits@bostonlawgroup.com

15

Exhibit
1

**From:** Jr Sevillano <jrsevillano@padela.com>
**Date:** May 22, 2018 at 2:51:03 PM EDT
**To:** Val Gurvits <vgurvits@bostonlawgroup.com>
**Subject: RE: Panama Legal Serivces**

Dear Mr. Gurvits,

After reviewing your request, as well as the documents attached, include

- WIPO Decision D2018-0104.

- Washington Complaint.

- England filed particulars of claim.

In connection with the Panamanian Intellectual Property Law, as well as
ground to initiate legal action, to dispute an international arbitration reso

We would be legally capable of request the recognition and execution, o
serve to dispute the previously rendered resolution from an International

Regards.



**Juan Raúl Sevillano**

Exhibit
2

## (CRE) D2018-0104 <bestvlk.com> et al. Notification of Decision

---

**Pananames Support** <support@pananames.com>                    Thu, May 10, 2018 at 4:45 AM
To: Domain.Disputes@wipo.int, UDRPdisputes@godaddy.com, info@mapasl.com, matt@bostonlawgroup.com,
vgurvits@bostonlawgroup.com
Cc: udrp@icann.org

Dear Parties,

In accordance with Paragraph 4(k) of the UDRP Policy, the Registrar (URL Solutions Inc.) will implement the Panel's decision **10
business days** after receiving the decision from the dispute resolution service provider.

We confirm that the transfer of the disputed domain names (full list available below) to the Complainant will take place **on May
24, 2018,** unless we receive official documentation confirming that the Respondent has appealed against the Decision of the
Provider.

Domain names registered with URL Solutions, Inc. that are to be transfered to the Complainant:

BESTVLK.COM
BESTVULKAN.ORG
BESTVULKAN1.COM
BESTVULKAN10.COM
BESTVULKAN2.COM
BESTVULKAN3.COM
BESTVULKAN4.COM
BESTVULKAN5.COM
BESTVULKAN6.COM
BESTVULKAN7.COM
BESTVULKAN8.COM
BESTVULKAN9.COM
CASINOVLK.COM
CLUB-VULKAN.TV
DELUXVULKAN.COM
MOIVULKAN.COM
MOYVULCAN.COM
MYVELKAMDELUXE.COM
MYVULK.COM
MYVULKAN.EMAIL
VELCAM-DELUX.CO
VELCAMDELUXE.CO
VELCAMDELUXE.COM
VELCOMDELUXE.CO
VELCOMDELUXE.COM
VELKAM-DELUX.CO
VELKAM.TV
VELKAMDELUXE.CO
VELKAMDELUXE.COM
VELKAMDELUXE.XYZ
VELKAMDELUXE1.COM
VELKAMDELUXE11.COM
VELKAMDELUXE15.COM
VELKAMDELUXE18.COM
VELKAMDELUXE21.COM
VELKAMDELUXE4.COM
VELKAMDELUXE6.COM
VELKAMDELUXE9.COM
VELKOM-DELUX.CO
VELKOMDELUXE.CO
VELKOMDELUXE.COM
VIPVULKAN.COM
VLKGAMES.COM
VLKNGAMES.BIZ
VLKNGAMES.CO
VLKNGAMES.EMAIL
VLKNGAMES.INFO
VLKNGAMES.MOBI
VLKNGAMES.NET

VLKNGAMES.ONLINE
VLKNGAMES.ORG
VLKNGAMES.XYZ
VLKNSLOTS.COM
VLKONLINE.COM
VLKPLAY.COM
VLKSLOTS.COM
VULCAN-DELUX.NET
VULCAN-DELUX.ORG
VULCAN-MILLION.COM
VULCANDELUX.CC
VULCANDELUX.COM
VULCANDELUX.MOBI
VULCANDELUX.XYZ
VULCANDELUXE.COM
VULCANDELUXE.EMAIL
VULCANDELUXE.MOBI
VULCANDELUXE.ONLINE
VULKAN-DELUX.NET
VULKAN-PALACE.COM
VULKANCASINO.COM
VULKANDELUX.CC
VULKANDELUX.MOBI
VULKANDELUX.ONLINE
VULKANDELUX.XYZ
VULKANDELUXE2.COM
VULKANPRIZE.COM
WIN-VULKAN.COM

If there is no legal action from the Respondent within the allocated timeframe, the domain names will remain in locked status until the Complainant opens an account in our system (sign-up link - https://domains.pananames.com/auth/register) and provides notice of the account`s email address.

We would like to remind that the Complainant confirmed their intent to cover the renewal cost of the disputed domains that were set to expire during the course of the Procedure.
We will provide further instructions for the Complainant at the time of the implementation of the Decision on May 24.

As soon as we locate the Complainant`s account and receive their compensation for the renewals, we will push the domains **(77)** to this account and remove all locks in order to allow the Complainant to take full ownership and control over said domain names.
Whois records will be updated according to the data available in Complainant`s account.

For any further information, please feel free to contact us.


---
Best Regards,
Andrii Herasymenko
URL Solutions, Inc
Pananames.com

On 08.05.2018 21:00, Domain.Disputes@wipo.int wrote:


## WIPO Arbitration and Mediation Center

WIPO Logo

---

May 8, 2018


### Re: Case No. D2018-0104
<bestvlk.com>
<bestvulkan.org>
<bestvulkan1.com>
<bestvulkan10.com>
<bestvulkan2.com>

\<bestvulkan3.com\>
\<bestvulkan4.com\>
\<bestvulkan5.com\>
\<bestvulkan6.com\>
\<bestvulkan7.com\>
\<bestvulkan8.com\>
\<bestvulkan9.com\>
\<casinovlk.com\>
\<club-vulkan.tv\>
\<deluxvulkan.com\>
\<game-vulcan.com\>
\<game-vulkan.com\>
\<lucky-vulcan.com\>
\<lucky-vulkan.com\>
\<moi-vulcan.com\>
\<moi-vulkan.com\>
\<moivulkan.com\>
\<moyvulcan.com\>
\<myvelkamdeluxe.com\>
\<myvulkan.email\>
\<myvulk.com\>
\<play-vulcan.com\>
\<play-vulkan.com\>
\<velcam-delux.co\>
\<velcamdeluxe.co\>
\<velcamdeluxe.com\>
\<velcomdeluxe.co\>
\<velcomdeluxe.com\>
\<velkam-delux.co\>
\<velkamdeluxe.co\>
\<velkamdeluxe.com\>
\<velkamdeluxe.xyz\>
\<velkamdeluxe1.com\>
\<velkamdeluxe11.com\>
\<velkamdeluxe15.com\>
\<velkamdeluxe18.com\>
\<velkamdeluxe21.com\>
\<velkamdeluxe4.com\>
\<velkamdeluxe6.com\>
\<velkamdeluxe9.com\>
\<velkam.email\>
\<velkam.tv\>
\<velkom-delux.co\>
\<velkomdeluxe.co\>
\<velkomdeluxe.com\>
\<vipvulkan.com\>
\<vlkgames.com\>
\<vlk.me\>
\<vlkngames.biz\>
\<vlkngames.co\>
\<vlkngames.email\>
\<vlkngames.info\>
\<vlkngames.mobi\>
\<vlkngames.net\>
\<vlkngames.online\>
\<vlkngames.org\>
\<vlkngames.xyz\>
\<vlknslots.com\>
\<vlkonline.com\>
\<vlkplay.com\>
\<vlkslots.com\>
\<vulcandelux.cc\>
\<vulcandelux.club\>
\<vulcandelux.com\>
\<vulcandeluxe.club\>

**<vulcandeluxe.com>**
**<vulcandeluxe.email>**
**<vulcandeluxe.mobi>**
**<vulcandeluxe.online>**
**<vulcandelux.mobi>**
**<vulcan-delux.net>**
**<vulcan-delux.org>**
**<vulcandelux.xyz>**
**<vulcan-million.com>**
**<vulcanno.com>**
**<vulkancasino.com>**
**<vulkanclub.biz>**
**<vulkanclub.info>**
**<vulkanclub.net>**
**<vulkanclub.org>**
**<vulkandelux.cc>**
**<vulkandelux.club>**
**<vulkandeluxe.club>**
**<vulkandeluxe.email>**
**<vulkandeluxe2.com>**
**<vulkandelux.mobi>**
**<vulkan-delux.net>**
**<vulkandelux.online>**
**<vulkandelux.xyz>**
**<vulkan-million.com>**
**<vulkan-palace.com>**
**<vulkanplay.net>**
**<vulkanprize.com>**
**<welcomespin.com>**
**<win-vulkan.com>**
**Notification of Decision**

Dear Parties,

Please find attached the full text of the decision issued on May 1, 2018 by the Administrative Panel in the above-referenced case.


The Administrative Panel's finding is as follows:

For the foregoing reasons, in accordance with paragraphs 4(i) of the Policy and 15 of the Rules, the Panel orders that the Disputed Domain Names, <bestvlk.com>, <bestvulkan.org>, <bestvulkan1.com>, <bestvulkan10.com>, <bestvulkan2.com>, <bestvulkan3.com>, <bestvulkan4.com>, <bestvulkan5.com>, <bestvulkan6.com>, <bestvulkan7.com>, <bestvulkan8.com>, <bestvulkan9.com>, <casinovlk.com>, <club-vulkan.tv>, <deluxvulkan.com>, <game-vulcan.com>, <game-vulkan.com>, <lucky-vulcan.com>, <lucky-vulkan.com>, <moi-vulcan.com>, <moi-vulkan.com>, <moivulkan.com>, <moyvulcan.com>, <myvelkamdeluxe.com>, <myvulkan.email>, <myvulk.com>, <play-vulcan.com>, <play-vulkan.com>, <velcam-delux.co>, <velcamdeluxe.co>, <velcamdeluxe.com>, <velcomdeluxe.co>, <velcomdeluxe.com>, <velkam-delux.co>, <v! elkamdeluxe.co>, <velkamdeluxe.com>, <velkamdeluxe.xyz>, <velkamdeluxe1.com>, <velkamdeluxe11.com>, <velkamdeluxe15.com>, <velkamdeluxe18.com>, <velkamdeluxe21.com>, <velkamdeluxe4.com>, <velkamdeluxe6.com>, <velkamdeluxe9.com>, <velkam.email>, <velkam.tv>, <velkom-delux.co>, <velkomdeluxe.co>, <velkomdeluxe.com>, <vipvulkan.com>, <vlkgames.com>, <vlk.me>, <vlkngames.biz>, <vlkngames.com>, <vlkngames.email>, <vlkngames.info>, <vlkngames.mobi>, <vlkngames.net>, <vlkngames.online>, <vlkngames.org>, <vlkngames.xyz>, <vlknslots.com>, <vlkonline.com>, <vlkplay.com>, <vlkslots.com>, <vulcandelux.cc>, <vulcandelux.club>, <vulcandelux.com>, <vulcandeluxe.club>, <vulcandeluxe.com>, <vulcandeluxe.email>, <vulcandeluxe.mobi>, <vulcandeluxe.online>, <!vulcandelux.mobi>, <vulcan-delux.net>, <vulcan-del! ux.org>, <vulcandelux.xyz>, <vulcan-million.com>, <vulcanno.com>, <vulkancasino.com>, <vulkanclub.biz>, <vulkanclub.info>, <vulkanclub.net>, <vulkanclub.org>, <vulkandelux.cc>, <vulkandelux.club>, <vulkandeluxe.club>, <vulkandeluxe.email>, <vulkandeluxe2.com>, <vulkandelux.mobi>, <vulkan-delux.net>, <vulkandelux.online>, <vulkandelux.xyz>, <vulkan-million.com>, <vulkan-palace.com>, <vulkanplay.net>, <vulkanprize.com>, and <win-vulkan.com> be transferred to the Complainants.

The Complaint is denied as to the Disputed Domain Name <welcomespin.com>.

Pursuant to Paragraph 4(k) of the Uniform Domain Name Dispute Resolution Policy, the concerned Registrars GoDaddy.com, LLC and URL Solutions, Inc. shall proceed to implement the above decision on the tenth business day (as observed in the location of that Registrar's principal office) after receiving this notification. The concerned Registrar will not implement the decision if, before the 10-day waiting period has expired, the Respondent submits official documentation (such as a copy of a complaint, file stamped by the clerk of the court) to the Registrar demonstrating that it has commenced a legal proceeding against the Complainant in a jurisdiction to which the Complainant has submitted under Paragraph 3(b)(xii) of the Rules for Uniform Domain Name Dispute Resolution Policy (the Rules).

Pursuant to Rules, Paragraph 16(a), the Registrar is directed to inform the Complainant, the Respondent, the Internet Corporation for Assigned Names and Numbers (ICANN) and the WIPO Arbitration and Mediation Center as soon as possible of the specific date on which the Administrative Panel's decision will be implemented, absent a notification by the Respondent in accordance with the above.

A signed version of the Decision shall be forwarded to the parties in due course.

Sincerely,

Francisco Salamero on behalf of Clay Entsminger
Case Manager

_____
_____
34, chemin des Colombettes, 1211 Geneva 20, Switzerland
T +41 22 338 82 47 F +41 22 740 37 00 E domain.disputes@wipo.int W www.wipo.int/amc